UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alliance for Natural Health USA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-02989-CRC |

**Reply Memorandum in Support of Defendants' Motion to Dismiss**

OF COUNSEL:

SEAN R. KEVENEY
Acting General Counsel
U.S. Department of Health and Human Services

ROBERT FOSTER
Deputy General Counsel
U.S. Department of Health and Human Services
Chief Counsel for Food, Research, and Drugs

WENDY VICENTE
Deputy Chief Counsel, Litigation

ELIZABETH BONOMO
Assistant Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

YAAKOV M. ROTH
Acting Assistant Attorney General

AMANDA N. LISKAMM
Director

LISA K. HSIAO
Deputy Director, Civil Litigation

JAMES W. HARLOW
Acting Assistant Director

SCOTT P. KENNEDY
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

    I.    Both Alliance for Natural Health *and* Meditrend lack standing ............................... 1

        A.   Alliance for Natural Health cannot sue on its own behalf ................................... 2

        B.   Alliance for Natural Health also has no representational standing because Meditrend itself lacks standing ............................................................................ 4

    II.   Plaintiffs' claims are still not legally viable ............................................................ 9

        A.   Count I remains a programmatic attack that misreads the CARES Act ............... 9

        B.   FDA's December 2022 Guidance was just that ..................................................... 11

        C.   Count II Still Fails To Identify Any Compelling Cause To Disturb FDA's Denial Of AHCF's Petition ................................................................................ 14

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Air Excursions LLC v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023) ................................................................................................6

*Am. Civil Constr., LLC v. Fort Myer Constr. Corp.*,
  246 F. Supp. 3d 309 (D.D.C. 2017) .......................................................................................5

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ................................................................................................3

*Aversa v. United States*,
  99 F.3d 1200 (1st Cir. 1996) ..................................................................................................5

*Bennett v. Spear*,
  520 U.S. 154, 177–78 (1997) ...............................................................................................12

*Bronner v. Duggan*,
  324 F.R.D. 285 (D.D.C. 2018) ...............................................................................................5

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...............................................................................................................7

*Coal. for Underground Expansion v. Mineta*,
  333 F.3d 193 (D.C. Cir. 2003) ...............................................................................................5

*Ctr. for Biological Diversity v. Trump*,
  453 F. Supp. 3d 11 (D.D.C. 2020) .........................................................................................4

*Emera Maine v. FERC*,
  854 F.3d 9, 24 (D.C. Cir. 2017) ...........................................................................................11

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ...............................................................................................................7

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ............................................................................................2, 7

*Fund Democracy, LLC v. Sec. & Exch. Comm'n*,
  278 F.3d 21 (D.C. Cir. 2002) .............................................................................................3, 6

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ...............................................................................................................4

*Iowaska Church of Healing v. Werfel*,
  105 F.4th 402 (D.C. Cir. 2024) ......................................................................................2, 3, 6

*Kiewit Power Constructors Co. v. Sec'y of Labor*,
  959 F.3d 381 (D.C. Cir. 2020) ...............................................................................................5

*M.M.V. v. Garland*,
    1 F.4th 1100 (D.C. Cir. 2021) .................................................................................................4

*McAfee v. FDA*,
    36 F.4th 272 (D.C. Cir. 2022)................................................................................................14

*\*MediNatura, Inc. v. FDA*, 496 F. Supp. 3d 416 (D.D.C. 2020),
    *aff'd*, 998 F.3d 931 (D.C. Cir. 2021) ...............................................................................10, 12

*\*MediNatura, Inc. v. FDA*,
    998 F.3d 931 (D.C. Cir. 2021).........................................................................................3, 10

*Montgomery v. McDonough*,
    682 F. Supp. 3d 1 (D.D.C. 2023) .....................................................................................4, 10

*Murthy v. Missouri*,
    603 U.S. 43, 57 (2024) ............................................................................................................4

*Nat'l Ass'n of Home Builders v. EPA*,
    667 F.3d 6 (D.C. Cir. 2011). ...............................................................................................3, 6

*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995)................................................................................................2

*Pearson v. Dist. of Columbia*,
    644 F. Supp. 2d 23 (D.D.C. 2009) ......................................................................................1, 2

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)..................................................................................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................................5

*Turlock Irr. Dist. v. FERC*,
    786 F.3d 18 (D.C. Cir. 2015)..................................................................................................3

*Twin Rivers Paper Co. LLC v. Sec. & Exch. Comm'n*,
    934 F.3d 607 (D.C. Cir. 2019)................................................................................................4

**Statutes**

134 Stat. at 454 .............................................................................................................................11

21 U.S.C. §§ 321(g), 321(p), 331(d), 355(a) .........................................................................10, 12

Pub. L. No. 116-136, § 3853(b), 134 Stat. 281, 454 (2020).........................................................10

**Rules**

Fed. R. Civ. P. 12(h)(3) …....……………………………………………………………….………5

**INTRODUCTION**

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss, ECF No. 6 (Opp'n), not only confirms that Alliance for Natural Health lacks standing; it shows that Meditrend lacks standing too. Alliance for Natural Health remains a mere interested bystander. As for Meditrend, its own evidence reveals that its claimed injuries are not traceable to Defendants' challenged conduct nor redressable by success on the merits.

Even if Plaintiffs had standing, their arguments on the merits fail for a few simple reasons. First, Plaintiffs repeatedly conflate an event *not* challenged in the Complaint—FDA's withdrawal of CPG 400.400 in October 2019—with the issuance of a guidance document three years later in December 2022 (December 2022 Guidance). As a result, while Plaintiffs defend Counts II, III, and IV by arguing that the *former* decision constitutes final agency action and was arbitrary and capricious, those arguments are beside the point. Second, in defending Count I, Plaintiffs persist in misreading the CARES Act. Contrary to Plaintiffs' construction, that statute simply stated that the new framework for evaluating OTC drugs did not apply to homeopathic drugs, which instead remained subject to the same statutory requirements that had always governed them. For all these reasons, and those in Defendants' Memorandum in Support of their Motion to Dismiss, ECF No. 5-1 (Defs.' Mem.), Plaintiffs' Complaint must be dismissed.

**ARGUMENT**

**I. Both Alliance for Natural Health *and* Meditrend lack standing**

A plaintiff can sometimes plead themselves "out of court by alleging a host of facts that only serve to totally undercut [their] claims." *Pearson v. Dist. of Columbia*, 644 F. Supp. 2d 23, 38 (D.D.C. 2009). Meditrend has done just that. Although FDA previously challenged only Alliance for Natural Health's standing to sue, *see* Defs.' Mem. 8-10, both

plaintiffs submitted evidence to show "each entity's standing," Opp'n 2. In fact, their submissions reveal the opposite. Not only does Alliance for Natural Health lack standing; Meditrend does too.

### A. Alliance for Natural Health cannot sue on its own behalf

Alliance for Natural Health asserts a right to "sue on [its] own behalf," which is known as "organizational standing." Opp'n 10. FDA's motion to dismiss explained how, under D.C. Circuit precedent, Alliance for Natural Health must therefore "show such concrete and demonstrable injury to [its] activities—with a consequent drain on [its] resources—constituting more than simply a setback to [its] abstract social interests." Defs.' Mem. 9 (quoting *Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 412-13 (D.C. Cir. 2024) (cleaned up)). Yet the complaint "asserts no cognizable injury to the organization from FDA's challenged conduct." Defs.' Mem. 9. Belatedly in opposition, Alliance for Natural Health advances two theories of organizational injury, neither of which suffices.

Alliance for Natural Health says that "premarket approval for homeopathic drugs frustrates [its] mission by making it more difficult to access and more costly to obtain homeopathic products." Opp'n 10. But "frustration of an organization's objectives 'is the type of abstract concern that does not impart standing.'" *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). An organization instead must show "an inhibition of [its] daily operations," *id.* at 919 (quotation omitted), which Alliance for Natural Health fails to do, *see generally* Verkerk Decl., ECF No. 6-1.

Next, Alliance for Natural Health asserts standing because FDA "ultimately rejected" the group's position advanced during the "notice-and-comment proceeding" for the December 2022 Guidance. Opp'n 11. However, "[p]articipation in agency proceedings is alone insufficient to satisfy judicial standing requirements." *Fund*

2

*Democracy, LLC v. Sec. & Exch. Comm'n*, 278 F.3d 21, 27 (D.C. Cir. 2002). The effort spent "submitting comments to" FDA also "do[es] not suffice." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011). Such "expenditure of resources on advocacy is not a cognizable Article III injury," regardless of "whether the advocacy takes place through litigation or administrative proceedings." *Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015).

Furthermore, even if either theory of injury were viable, the evidence disproves any traceability between such injury and "the challenged action of the defendant." *Iowaska Church of Healing*, 105 F.4th at 413 (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). The event that supposedly "caused an injury-in-fact" to Alliance for Natural Health was "FDA's recent decision to revoke the Compliance Policy Guide (CPG) 400.400." Verkerk Decl. ¶ 4. But as Alliance itself acknowledges, that revocation indisputably occurred "[o]n October 25, 2019." *Id.* ¶ 3; *see also* Defs.' Mem. 5 ("Withdrawal of CPG 400.400 officially took place in October 2019.") (citing 84 Fed. Reg. 57,349 (October 25, 2019)); *MediNatura, Inc. v. FDA*, 998 F.3d 931, 936 (D.C. Cir. 2021) (noting that, on October 25, 2019, "FDA published notice—effective immediately—that it was withdrawing CPG 400.400").[1] And the Complaint does not challenge the October 2019 revocation of CPG 400.400. Rather, it targets later events: FDA's December 2022 issuance of a guidance document and denial of a citizen petition, as well as the agency's efforts after March 2020 to implement the CARES Act. *See* Compl. ¶¶ 58-111.

In claiming that Count I "challenges FDA's revocation of the Compliance Policy Guide," Opp'n 14, Plaintiffs attempt to rewrite the Complaint in their Opposition. Count I never mentions the October 2019 revocation. *See* Compl. ¶¶ 58-72 (failing to refer, even in passing, to the October 2019 revocation). So Plaintiffs "may not amend"

---

[1] Plaintiffs' brief claims the revocation of CPG 400.400 was merely "proposed in 2019" and then "became final in December 2022," *see* Opp'n 22 (citing nothing), but the unequivocal historical record proves otherwise.

3

that claim now "through [their] opposition to a motion to dismiss" to challenge that distinct action. *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 14 (D.D.C. 2023) (citation omitted).

Finally, while Plaintiffs invoke the so-called "one plaintiff rule," Opp'n 13, they neither acknowledge nor rebut Defendants' argument that Alliance for Natural Health cannot shield its standing from scrutiny merely by "piggybacking on" Meditrand's, Defs.' Mem. 9-10. Instead, Plaintiffs misconstrue the Supreme Court's observation that "one plaintiff" can establish a "case or controversy" if "she has standing to sue," *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (cleaned up). Contrary to Plaintiffs' suggestion, that principle does not mean that "a court *must* permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing." *M.M.V. v. Garland*, 1 F.4th 1100, 1111 (D.C. Cir. 2021) (citation omitted). Rather, it means only that a court *may* exercise "discretion" in declining to "analyze standing for each individual plaintiff when it will not affect the case." *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 29 (D.D.C. 2020). Thus, even if Meditrend could establish standing, that would not justify ignoring Alliance's patent failure to satisfy the requirements of organizational standing.

**B.  Alliance for Natural Health also has no representational standing because Meditrend itself lacks standing**

Alliance for Natural Health also belatedly claims a right to sue "on behalf of [its] members," which is commonly known as "representational standing." Opp'n 10. "To establish representational standing, an organization must prove, among other things, that its members would 'have standing to sue in their own right.'" *Twin Rivers Paper Co. LLC v. Sec. & Exch. Comm'n*, 934 F.3d 607, 612 (D.C. Cir. 2019) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Because Alliance for Natural Health identifies only one member—Meditrend—representational standing depends entirely

4

on Meditrend's individual standing. *See* Opp'n 10-12 (asserting only Meditrend's standing in support of a representational theory).

Scrutiny of Meditrend's standing on reply is proper and timely. Indeed, "the very nature of a reply brief" permits Defendants to "respond[] to contentions made by" Plaintiffs about Meditrend's standing in its opposition papers. *Kiewit Power Constructors Co. v. Sec'y of Labor*, 959 F.3d 381, 393 (D.C. Cir. 2020). The "undisputed facts" set forth in those papers call into question Meditrend's own standing. *Pearson*, 644 F. Supp. 2d at 38. Consistent with the Court's "continuing duty to examine its subject matter jurisdiction" anytime it "comes into doubt," it must therefore consider those facts in assessing its subject matter jurisdiction. *Bronner v. Duggan*, 324 F.R.D. 285, 294 (D.D.C. 2018); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[2]

For Meditrend to establish standing, the company "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016). None of the theories of injury described in Meditrend's submissions can satisfy those elements.

First, like Alliance for Natural Health, Meditrend traces most of its alleged injuries to FDA's withdrawal of CPG 400.400. *See* Savage Decl., ECF No. 6-2, ¶ 15 (contending Meditrend is "unable to introduce" new products due to "FDA's decision to revoke the CPG"), ¶ 11 ("Whole Foods . . . removed all Meditrend products . . . [d]ue to the FDA's

---

[2] Moreover, in adjudicating a motion under Rule 12(b)(1), the Court may "consider the complaint supplemented by undisputed facts evidenced in the record," which here includes the declarations accompanying Plaintiffs' opposition. *Am. Civil Constr., LLC v. Fort Myer Constr. Corp.*, 246 F. Supp. 3d 309, 316 (D.D.C. 2017) (quoting *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003)); *see also Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction," a court "may consider whatever evidence has been submitted . . . .").

revocation of the CPG"), ¶ 12 (attributing "predatory lawsuits" and a "possibility" Sprouts will remove Meditrend's products due to "revocation of the CPG"). But as discussed above, such injuries are not traceable to "the challenged action[s] of the defendant[s]," *Iowaska Church of Healing*, 105 F.4th at 413, because Plaintiffs do not challenge the October 2019 withdrawal of CPG 400.400.[3]

Even if the alleged claims encompassed the October 2019 withdrawal of CPG 400.400, the company's asserted injuries fail for other reasons as well. For example, Meditrend complains that "[d]ue to the FDA's revocation of the CPG and actions against the homeopathic industry, Whole Foods cancelled our involvement in [a] global initiative and removed all Meditrend products from its stores." Savage Decl. ¶ 11. But the company offers no facts to substantiate this other than its own similarly general assertion in a response to a trade association survey. *See* ECF No. 6-2 at pp. 8-9. These vague, conclusory assertions offer no plausible, factual explanation about *why* Whole Foods removed Meditrend's product from its stores. Instead, they reflect bare speculation that the removal of Meditrend's products was somehow "related to [unidentified] FDA actions in the homeopathic industry." *Id.* "[M]ere conclusory statements" of this kind cannot "support an inference of standing" on a motion to dismiss. *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023). That is because they raise only the "possibility that the challenged action caused the injury alleged" without plausibly accounting for other possibilities. *Id.* at 278 (rejecting speculation about how the challenged action may have influenced a third-party's decision-making).

Meditrend's concern about the "possibility that" a health food store chain, Sprouts, might stop selling its products fares even worse. Savage Decl. ¶ 12. This type of

---

[3] Also like Alliance for Natural Health, Meditrend points to its "participat[ion]" in an FDA proceeding to establish its standing. Opp'n 10. For the reasons already discussed, that does not suffice. *See Fund Democracy*, 278 F.3d at 27; *Nat'l Ass'n of Home Builders*, 667 F.3d at 12.

speculation about a "*possible* future injury"—rather than a "certainly impending" one—is "not sufficient" to satisfy standing's injury-in-fact requirement, let alone traceability or redressability. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted). Indeed, Meditrend's own records show significant product sales at Sprouts through December 31, 2024. *See* ECF No. 6-3 at 35-41.

Nor does Meditrend's vague invocation of "predatory lawsuits" establish its standing. Savage Decl. ¶ 12. Meditrend offers no facts substantiating that such lawsuits have even been filed, let alone that the company is a "co-litigant" in them or that they were "triggered" by FDA's actions. *Id.* It merely points to an October 2023 demand letter sent to Sprouts (*not* Meditrend), which argues, on a variety of bases, that homeopathic products are a "health fraud." ECF No. 6-2 at 26-29. And the only specific product identified in that letter is *not* Meditrend's. *See id.* at 21 (referring to "Hyland's Bioplasma Cell Salts").

Meditrend also claims to have "incurred over $68,000 in litigation expenses related to these regulatory issues,"[4] but it offers no plausible explanation about which specific "regulatory issues" are to blame, nor how those issues caused its expenses. *Id.* at ¶ 13; *see also Air Excursions*, 66 F.4th at 277 ("conclusory statements" devoid of "sufficient factual matter" do not support standing). To the extent these costs are related to this lawsuit or Meditrend's desire to avoid some "hypothetical future harm," they cannot confer standing. *Food & Water Watch*, 808 F.3d at 919; *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 370 (2024) (a litigant "cannot spend its way into standing").

Meditrend next asserts that, "[d]ue to" FDA's December 2022 Guidance, the company "lost access to critical antigenic ingredients" and therefore "turned down numerous orders." Savage Decl. ¶¶ 7, 13. According to Meditrend, "two main U.S. [s]uppliers" of the ingredients "refused to permit" facility inspections by Meditrend's

---

[4] Plaintiffs' brief says the amount is "over $85,000," Opp'n 19, but the discrepancy is immaterial.

7

contracted "product manufacturer," so it can no longer "procure these essential ingredients" from the suppliers. *Id.* ¶¶ 8-9. But the correspondence offered by Meditrend disproves any link between its supply issues and FDA's December 2022 Guidance.

To procure the necessary ingredients, Meditrend's manufacturer said it "[r]eally just need[s] one of the suppliers to fill out our questionnaire and then sell to us." ECF No. 6-2 at 12. "[I]t should be a concern that none of [the suppliers] want to do that," the manufacturer continued, because regardless of whether the product "is a food, supplement, or drug[,] [w]e need to know that they follow a quality and [Good Manufacturing Practice] process for safety and for [Meditrend's] benefit." *Id.* Indeed, without information from the suppliers, the manufacturer has "*no idea* what is in [the suppliers'] bottles or if they follow *any* quality process." *Id.* (emphases added); *see also* ECF No. 6-2 at 16 ("[T]here are no suppliers of antigens that we can find that will work with us. None will fill out the paper[]work . . . ."). Thus, Meditrend's supply challenge "results from the independent action of some third party not before the court"—here, suppliers who refuse to disclose basic information and a manufacturer who therefore refuses to work with them—not "the challenged action of the [D]efendant." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Both traceability and redressability are therefore absent.

Finally, Meditrend's evidence does not back up the assertion it could "not introduce[] any new formulations" of products due to the challenged actions. Opp'n 9, 19. As Meditrend told one retailer, it was "reorganizing due to supply chain issues and other market forces outside our control," so "sales to online resellers selling via third-party marketplaces, including Amazon, are being halted." ECF No. 6-2 at 38. Another email similarly explained that Meditrend was "simply restricting sales via 3rd party seller platforms" due to a "deci[sion] to change [their] business model in this particular area for the time being." ECF No. 6-2 at 35. These emails do not bear out Meditrend's

8

vague suggestion that it has been "*unable* to introduce any new formulations" because of "FDA's decision to revoke the CPG." Savage Decl. ¶ 15 (emphasis added). If anything, the emails attribute that inability to the "supply chain issues" that, as discussed above, are traceable to the independent actions of Meditrend's suppliers and manufacturer. ECF No. 6-2 at 38.[5]

For all of these reasons, neither Meditrend nor Alliance for Natural Health have standing, and therefore this Court lacks subject-matter jurisdiction.

## II. Plaintiffs' claims are still not legally viable

Even if Plaintiffs had standing, Claims I, III, and IV remain unreviewable under the APA because they do not challenge any final agency action. And regardless, all of Plaintiffs' claims fail as a matter of law.

### A. Count I remains a programmatic attack that misreads the CARES Act

Defendants previously explained that Count I is unreviewable under the APA because it "does not refer to a single" final agency action, such as an "[FDA] order or regulation." Defs.' Mem. 10 (citation omitted). Plaintiffs respond that Count I "clearly challenges three discrete final agency actions": the "revocation of" CPG 400.400; the "denial of [Americans for Homeopathy Choice Foundation's (AHCF)] request" to initiate rulemaking; and "the December 2022 guidance." Opp'n 15. Tellingly, Plaintiffs cite nothing in the Complaint to support this statement. That's because, as pleaded, Count I never mentions those three actions. *See* Compl. ¶¶ 58-72.

---

[5] Nor does Meditrend point to any facts substantiating its vague assertion that, "due to the FDA's changes," "Americans have lost access to" a "cancer and immune-related immunotherapeutic" previously "manufactured by Meditrend." Savage Decl. ¶ 10. And even if "changes" by FDA somehow reduced "Americans'" access to a product, *id.*, Meditrend's standing cannot be predicated on such a "generalized grievance" shared "by all or a large class of citizens," nor on "the interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (cleaned up).

9

The Complaint nowhere purports to challenge "FDA's revocation of" CPG 400.400 in December 2019. Opp'n 14. And although Counts II, III, and IV explicitly do challenge the rulemaking denial and December 2022 Guidance, the absence of similar language in Count I demonstrates that it challenges something *else*. By Count I's own terms, that something else is FDA's "policy regarding homeopathic OTC drugs" and the way the agency "[r]egulat[es] OTC homeopathic drugs" generally. Compl. ¶¶ 71, 59. No matter how hard Plaintiffs try to "amend [the] complaint through opposition papers," *Montgomery*, 682 F. Supp. 3d at 14, this broad, programmatic attack is not cognizable under the APA.

Even if Count I were reviewable, Plaintiffs' Opposition confirms that it is premised on a misreading of the CARES Act. The parties agree § 3853(b) of the CARES Act "preserves the *status quo*" as it relates to homeopathic drugs. Opp'n 22. But Plaintiffs neglect that this means the *statutory* status quo. Homeopathic drugs were always "subject to the [Food, Drug, and Cosmetic Act's (FDCA)] requirement that any 'new drug' must be approved" before it is brought to market. *MediNatura*, 998 F.3d at 935 (citing 21 U.S.C. §§ 321(g), 321(p), 331(d), 355(a)). And "[n]othing in" § 3853 of the CARES Act, Congress said, "shall be construed" to change that. Pub. L. No. 116-136, § 3853(b), 134 Stat. 281, 454 (2020). Thus, FDA did not "impose" premarket approval "requirements" on homeopathic drugs "without express congressional authorization." Opp'n 23. *Congress itself* did in the FDCA, and it declined to alter those legal requirements for homeopathic drugs through the CARES Act.

Plaintiffs also persist in misconstruing § 3853(a)'s "cross-reference to 37 Fed. Reg. 9466" Opp'n 22-23. As Defendants discussed (Defs.' Mem. 15-16), the most "straightforward" interpretation of that cross-reference—and thus, the "best" one, *Jones v. Hendrix*, 599 U.S. 465, 480 (2023)—is that Congress intended to exclude homeopathic drugs from the CARES Act's new governing framework for OTC drugs. In other words, Congress "meant what it said and said what it meant," *Emera Maine v. FERC*, 854 F.3d 9,

10

24 (D.C. Cir. 2017): that the CARES Act's new framework for OTC drugs would not "apply to" the kind of drugs identified in that notice—i.e., homeopathic drugs. 134 Stat. at 454.

Plaintiffs' contrary argument is that, by this cross-reference, Congress meant something *more* than what it said: namely, to preserve "the aim of the CPG" due to the "uniqueness of homeopathic medicine." Opp'n 23. However, it strains credulity to suggest that Congress's absolute silence about CPG 400.400 shows an "inten[t] to" bake that rescinded policy into the statute. Opp'n 22. Indeed, Plaintiffs ignore that Congress had no reason to "expressly" "state" any view at all on CPG 400.400 in the CARES Act, *id.*, because by the time that law was enacted in 2020, CPG 400.400 had already been revoked by FDA (in 2019).[6] The fact that this policy was no longer extant in 2020 makes it even more implausible that Congress, through its silence, "intended to retain" it. *Id.*

Plaintiffs' last-ditch appeal to "legislative history" fails because there is no textual "ambiguity" in the CARES Act to "clear up." Opp'n 23 (citation omitted). But even if there were, the "letter from Members of Congress" on which Plaintiffs rely does not qualify as legislative *history* because, as Plaintiffs acknowledge, it was issued "post-enactment." Opp'n 23. Thus, far from being "direct evidence of congressional intent," *id.*, it is "not a legitimate tool of statutory interpretation" at all, *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).

    B.    **FDA's December 2022 Guidance was just that**

In moving to dismiss Counts III and IV, Defendants argued those claims do not challenge final agency action; instead, they attack a guidance document that does not determine "rights or obligations" or produce "legal consequences." Defs.' Mem. 11

---

[6] Plaintiffs suggest this challenge to their reading of the CARES Act is not "appropriately brought within the context of a Rule 12 motion." Opp'n 6. On the contrary, a claim challenged under Rule 12(b)(6) "must be dismissed" if it rests on "legal theory" that is "unavailing," so waiting for summary judgment would "only delay[] the inevitable." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

11

(quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). In response, Plaintiffs argue that a *different* event—FDA's "revocation of the CPG"—constitutes final agency action. Opp'n 17. Thus, Plaintiffs persist in conflating the December 2022 Guidance with the revocation that, as discussed above (*supra* p. 3), occurred "on October 25, 2019." Verkerk Decl. ¶ 3. All of Plaintiffs' arguments about the finality of that revocation (Opp'n 16-21) are therefore beside the point.[7]

This explains why Defendants' arguments about Counts III and IV are in no way "contrary to this Court's holding in *MediNatura, Inc. v. FDA*, 496 F. Supp. 3d 416, 423 (D.D.C. 2020), *aff'd*, 998 F.3d 931 (D.C. Cir. 2021)." Opp'n 15. Unlike the Complaint here, *MediNatura* explicitly challenged "FDA's withdrawal of CPG 400.400." 496 F. Supp. at 433. And the resulting decision confirms that withdrawal occurred "[i]n October 2019," *id.* at 430, not—as Plaintiffs insist—"in December of 2022," Opp'n 9, 22. Consequently, *MediNatura*'s conclusion that "withdrawal of CPG 400.400 constitutes final agency action," *id.* at 444, is of no help to Counts III or IV, because those claims explicitly challenge the "Guidance" that FDA published in "December 2022." Compl. ¶¶ 84, 100.

More basically, Plaintiffs also ignore that the obligations to which they object originate from FDCA, *not* the December 2022 Guidance. The Guidance did not "[]classif[y] homeopathic drugs as unapproved new drugs under 21 USC [§] 355," Opp'n 16, nor did it "introduce[] a fundamentally new regulatory framework" for such drugs, Opp'n 20. Rather, as the D.C. Circuit has recognized, homeopathic drugs are, and always were, "subject to the [FDCA's] requirement that any 'new drug' must be approved." *MediNatura*, 998 F.3d at 935 (citing 21 U.S.C. §§ 321(g), 321(p), 331(d), 355(a)). And while CPG 400.400 had "established conditions under which homeopathic

---

[7] Also irrelevant is Plaintiffs' argument that the December 2022 Guidance represents a "culmination" in FDA's decision-making process. Opp'n 14 n.10. Defendants did not argue otherwise. Defendants argued, under the "second *Bennett* prong," that the Guidance had no "legal effect." Defs.' Mem. 11-12 (quotation omitted).

12

drugs could 'ordinarily' be marketed without the FDA's premarket approval," *that* approach was withdrawn in 2019, not in 2022. *MediNatura*, 496 F. Supp. at 422.

Defendants also explained that, even if the December 2022 Guidance were final agency action, Plaintiffs have not plausibly alleged it was arbitrary and capricious. Defs.' Mem. 20-21. Plaintiffs relegate their response to a footnote. Opp'n 13 n.9. And that response fails because, like many other arguments in Plaintiffs' Opposition, it conflates the December 2022 Guidance with "FDA's decision to revoke the CPG" 400.400 in October 2019. *Id.* Thus, in arguing that the CPG's withdrawal "lacks a rational connection to the evidence" and "change[d] longstanding regulatory policy" without considering "reliance interests," *id.*, Plaintiffs again miss the point.

Plaintiffs further misconstrue the December 2022 Guidance's rationale and effect. Contrary to Plaintiffs' assertion, the December 2022 Guidance did not introduce any "[p]re-market approval requirements," so whether these requirements "address the root causes of safety issues cited by FDA" in the Guidance, Opp'n 14 n.9, is inapposite. Nor did the Guidance find that "homeopathic drugs are intrinsically unsafe." *Id.* Instead, it explained FDA's "risk-based approach" to future "enforcement and regulatory actions" concerning unapproved homeopathic drugs, and it provided, as background, "two examples among many" in which homeopathic drugs "posed a significant risk to patients." Harlow Decl. Ex. A, ECF No. 5-2, *Homeopathic Drug Products: Guidance for FDA Staff & Industry 3* (Dec. 2022) at 3-5.

Count IV is unsalvageable for similar reasons. As Defendants observed, Meditrend "knows the legal requirements to market homeopathic drugs" but "just doesn't want to" comply with them. Defs.' Mem. 21-22. Plaintiffs' responses are all based on the mistaken premise that the "December 2022 guidance . . . remove[d] the clear standards established under the CPG" by "revoking" it. Opp'n 20; *see supra* p. 3 (explaining why that premise is false).

13

### C. Count II Still Fails To Identify Any Compelling Cause To Disturb FDA's Denial Of AHCF's Petition.

Finally, regarding Count II, Defendants observed that it does not identify any "compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency," that would overcome the "highly deferential review" afforded to an agency's denial of a petition for rulemaking. Defs.' Mem. 17 (quoting *McAfee v. FDA*, 36 F.4th 272, 274 (D.C. Cir. 2022)). In a footnote, Plaintiffs reiterate, in conclusory fashion, that FDA "dismissed [AHCF's] request out of hand without a meaningful analysis." Opp'n 5 n.2. But for the reasons Defendants have already explained, that characterization is belied by the analysis and explanation on the face of the agency's response. *See* Defs.' Mem. 17-20.

### CONCLUSION

For the foregoing reasons, and those in Defendants' opening brief, this Court should grant Defendants' motion and dismiss this case.

April 7, 2025

Respectfully submitted,

/s/ *Scott P. Kennedy*
SCOTT P. KENNEDY
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
PO Box 386
Washington, DC  20044-0386
(202) 305-1837
(202) 514-8742 (fax)
scott.p.kennedy@usdoj.gov