UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alliance for Natural Health USA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-02989-CRC |

**Combined Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment**

OF COUNSEL:

MICHAEL B. STUART
General Counsel
U.S. Department of Health and Human Services

SEAN R. KEVENEY
Chief Counsel
Food and Drug Administration

WENDY VICENTE
Deputy Chief Counsel, Litigation

ELIZABETH BONOMO
Assistant Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD  20993-0002

BRETT A. SHUMATE
Acting Assistant Attorney General

JAMES W. HARLOW
Acting Assistant Director

DAVID H. HIXSON (Ill. Bar No. 6289751)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 449-8070
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1
BACKGROUND .............................................................................................................................. 2
    I.    FDA's regulation of homeopathic drugs ..................................................................... 2
    II.   This lawsuit ................................................................................................................. 4
LEGAL STANDARD ....................................................................................................................... 5
ARGUMENT .................................................................................................................................. 5
    I.    Plaintiffs have not proven any injury traceable to FDA's petition denial ............... 5
    II.   FDA reasonably denied AHCF's citizen petition ....................................................... 8
CONCLUSION .............................................................................................................................. 15

TABLE OF AUTHORITIES

**Cases**

*All. for Nat. Health, USA v. United States*,
  No. 24-cv-2989 (CRC), 2025 WL 1938165 (D.D.C. July 15, 2025) ................... 3, 4, 5, 6, 7, 9

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ................................................................................ 5

*AT&T Servs., Inc. v. FCC*,
  21 F.4th 841 (D.C. Cir. 2021) ................................................................................. 14

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
  462 U.S. 87 (1983) .................................................................................................. 14

*City of Duluth v. Nat'l Indian Gaming Comm'n*,
  89 F. Supp. 3d 56 (D.D.C. 2015) ............................................................................ 12

*CS-360, LLC v. U.S. Dep't of Veterans Affs.*,
  101 F. Supp. 3d 29 (D.D.C. 2015) ............................................................................ 5

*Ctr. for Biological Diversity v. Blank*,
  933 F. Supp. 2d 125 (D.D.C. 2013) ........................................................................ 12

*Dynalantic Corp. v. Dep't of Def.*,
  115 F.3d 1012 (D.C. Cir. 1997) ................................................................................ 6

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) .............................................................................................. 8, 9

*Ipsen Biopharms., Inc. v. Becerra*,
  108 F.4th 836 (D.C. Cir. 2024) .............................................................................. 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................. 6

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .................................................................................................. 6

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) .................................................................................................. 9

*McAfee v. FDA*,
  36 F.4th 272 (D.C. Cir. 2022) .................................................................................. 9

*MediNatura, Inc. v. FDA*,
  998 F.3d 931 (D.C. Cir. 2021) ....................................................................... 2, 3, 13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................................. 9, 14

*Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*,
   883 F.2d 93 (D.C. Cir. 1989) ............................................................................................... 9

*Phx. Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv.*,
   998 F.3d 999 (D.C. Cir. 2021) ............................................................................................. 8

*Rempfer v. Sharfstein*,
   583 F.3d 860 (D.C. Cir. 2009) ........................................................................................... 14

*Se. Conf. v. Vilsack*,
   684 F. Supp. 2d 135 (D.D.C. 2010) ..................................................................................... 5

*Seven Cty. Infrastructure Coal. v. Eagle Cty., Colo.*,
   145 S. Ct. 1497 (2025) ....................................................................................................... 14

*Simon v. E. Ky. Welfare Rts. Org.*,
   426 U.S. 26 (1976) ............................................................................................................... 7

*Swanson Grp. Mfg. LLC v. Jewell*,
   790 F.3d 235 (D.C. Cir. 2015) ............................................................................................. 6

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................................. 8

**Statutes**

5 U.S.C. §
   706(2)(A) ......................................................................................................................... 4, 8
   706(2)(B) ............................................................................................................................. 4
   706(2)(C) ............................................................................................................................. 4
   706(2)(E) ............................................................................................................................. 8

21 U.S.C. §
   321(g) .................................................................................................................................. 2
   321(g)(1) ............................................................................................................................. 2
   321(p) .................................................................................................................................. 2
   331(d) .................................................................................................................................. 2
   355(a) .................................................................................................................................. 2
   355(b)(1) ............................................................................................................................. 2
   355(c)(1)(A) ........................................................................................................................ 2
   355(d) .................................................................................................................................. 2
   355h ................................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 56(e) .................................................................................................................. 6

**Other Authorities**

Compliance Policy Guide Sec. 400.400 Conditions Under Which Homeopathic Drugs
  May Be Marketed; Withdrawal of Guidance,
  84 Fed. Reg. 57,439 (Oct. 25, 2019) .................................................................................. 2, 3

FDA, *Homeopathic Drug Products: Guidance for FDA Staff & Industry* (Dec. 2022),
  https://www.fda.gov/media/163755/download................................................... 4, 11, 13

**INTRODUCTION**

Plaintiffs Meditrend, Inc. and Alliance for Natural Health USA (ANH) filed this Administrative Procedure Act (APA) suit, challenging FDA's regulatory approach to homeopathic drugs. The Court already dismissed the claims regarding a 2022 guidance document and most of Plaintiffs' challenges to FDA's denial of a citizen petition that sought lesser oversight of homeopathic drugs. The sole aspect of this case remaining at summary judgment is Count III, specifically whether FDA had sufficient safety concerns about homeopathic drugs to warrant denying the petition.

FDA is entitled to summary judgment on Count III for two reasons. *First*, Plaintiffs lack standing. At the pleading stage, Plaintiffs survived FDA's jurisdictional challenge by the slimmest of margins. Indeed, the Court warned Plaintiffs to provide more and better evidence of standing at summary judgment. Rather than heed that warning, Meditrend abandons the one standing theory the Court previously found plausible. Meditrend now states that its alleged injuries are traceable to an action unchallenged in this case—the withdrawal of FDA's former guidance in 2019—*not* to the 2022 petition denial that Count III targets. Consequently, Meditrend cannot establish a fundamental element of Article III standing, and ANH, in turn, lacks representational standing.

*Second*, even if Plaintiffs could show standing, their APA claim is meritless. In denying the citizen petition, FDA acted well within the zone of reasonableness. The administrative record demonstrates the agency carefully considered the relevant evidence and reasonably explained its conclusions. Plaintiffs' arguments to the contrary mischaracterize FDA's findings, ignore its reasoning, and glide by inconvenient facts. The Court should grant summary judgment for FDA.

## BACKGROUND

**I.  FDA's regulation of homeopathic drugs**

"Homeopathy is an alternative medical practice based on two unconventional theories: (1) like cures like—the notion that a disease can be cured by a substance that produces similar symptoms in healthy people; and (2) the law of minimum dose—the notion that the *lower* the dose of the medication, the *greater* its effectiveness." *MediNatura, Inc. v. FDA*, 998 F.3d 931, 935 (D.C. Cir. 2021) (cleaned up). Like all drugs, homeopathic drugs are "subject to the" the Federal Food, Drug, and Cosmetic Act's (FDCA) "requirement that any 'new drug' must be approved." *Id.* (citing 21 U.S.C. §§ 321(g), (p), 331(d), 355(a)); *see* 21 U.S.C. § 321(g)(1). To obtain FDA approval, a manufacturer generally must submit a new drug application. 21 U.S.C. § 355(b)(1). FDA will approve an original new drug application only if the agency finds, based on the evidence before it, that the drug is safe and effective for its intended use under the conditions of use described in the drug's labeling. *Id.* § 355(c)(1)(A), (d).

Beginning in 1988, FDA "exercised its enforcement discretion regarding the sale of homeopathic drugs through" Compliance Policy Guide § 400.400 (CPG 400.400). *MediNatura*, 998 F.3d at 935. Though not "exempt[ing] homeopathic drugs from approval requirements," CPG 400.400 outlined certain conditions under which homeopathic drugs might be marketed without triggering an enforcement action. *Id.*

By 2015, FDA began to doubt the wisdom of CPG 400.400 due to the expansion of the homeopathic drug industry and the agency's receipt of adverse event reports involving homeopathic drugs. *See id.* at 936. While the agency evaluated its enforcement policies, concerns about the safety of homeopathic drugs mounted. In 2016, for example, adverse events related to "belladonna toxicity" included "reports of infant deaths and seizures." *Id.* at 943 (quoting Compliance Policy Guide Sec. 400.400 Conditions Under Which Homeopathic Drugs May Be Marketed; Withdrawal of

Guidance, 84 Fed. Reg. 57,439, 57,440 (Oct. 25, 2019)). After public comment, FDA announced in December 2017 its intent "to replace CPG 400.400 with a risk-based enforcement approach." *Id.* at 936 (citation omitted).

Withdrawal of CPG 400.400 officially took place in October 2019. *See All. for Nat. Health, USA v. United States*, No. 24-cv-2989 (CRC), 2025 WL 1938165, at *2, *6 (D.D.C. July 15, 2025) (citing 84 Fed. Reg. 57,439). Yet as FDA noted at the time, "withdrawing the CPG [did] not represent a change in the legal obligations that apply to homeopathic drugs under the statutes FDA administers." 84 Fed. Reg. at 57,440. "CPG 400.400 did not, and legally could not, provide a path for legal marketing of unapproved new drugs, including those that are homeopathic." *Id.* at 57,441. And "nothing in the [FDCA] exempts homeopathic drug products from any of the requirements in the [FDCA], including those related to approval, adulteration, and misbranding." *Id.* at 57,440. "FDA has never approved" a marketing application "for a homeopathic drug nor found a homeopathic drug to be GRAS/E and thus not a 'new drug' requiring" approval. *MediNatura*, 998 F.3d at 935.

After the withdrawal of CPG 400.400, Americans for Homeopathy Choice Foundation (AHCF) submitted a citizen petition to FDA. AR1–39. The petition contained numerous requests, including that the agency adopt AHCF's proposed regulations for the manufacture and sale of homeopathic drugs that would largely exempt them from the FDCA's requirement to obtain approval of a new drug application. AR2–7. The petition also requested that FDA adopt a risk-based enforcement policy that evaluates homeopathic drugs "in relation to the risks presented by other regulated products." AR7; *see* AR30 (policy should apply "across all areas of [FDA's] regulatory responsibility"). According to AHCF, homeopathic drugs are "inherently safe,"AR7, 20, so they should "fall into the lowest area of safety concern for all FDA regulated products," AR30; *see also* AR36, 50, 52, 57.

3

In December 2022, FDA denied AHCF's petition and issued a final guidance about homeopathic drugs. *See* AR7201–20; FDA, *Homeopathic Drug Products: Guidance for FDA Staff & Industry* (Dec. 2022)[1] (Final Guidance). The citizen petition response analyzed each of the petition's requests and explained why FDA disagreed with them. *See generally* AR7201-20. For instance, AHCF's claim that homeopathic drugs pose the "lowest area of safety concern," AR30, was inconsistent with evidence showing that "the safety of homeopathic drug products (as with all drug products) depends upon many factors," AR7218–19. FDA also cited and relied upon a memorandum that further discussed the agency's safety concerns. *See* AR7205 n.13 (citing AR7221–31). The memorandum explained, for example, that some homeopathic products can be "manufactured correctly" but nonetheless "have the potential to cause significant patient harm" because they contain ingredients that can "cause side effects, drug interactions, and allergic or other adverse reactions." AR7223. The memorandum also discussed numerous specific examples of safety problems FDA's compliance program had encountered in the field. AR7224–31.

**II. This lawsuit**

On October 21, 2024, the healthcare advocacy organization ANH and the homeopathic drug manufacturer Meditrend filed this suit under the APA. *See* Compl. ¶¶ 10, 14, 57–111, ECF No. 1. The Complaint's four APA claims variously allege that FDA's denial of AHCF's citizen petition and issuance of the Final Guidance were arbitrary and capricious, contrary to constitutional due process, and exceeded FDA's statutory jurisdiction. *See id.* ¶¶ 57–111; 5 U.S.C. § 706(2)(A)–(C).

On July 15, 2025, the Court issued its Memorandum Opinion & Order, granting Defendants' motion to dismiss in part and denying it in part. *See All. for Nat. Health*, 2025 WL 1938165. The Court dismissed Plaintiffs' challenge to the Final Guidance in

---

[1] https://www.fda.gov/media/163755/download.

4

Counts I, III, and IV for lack of final agency action, *id.* at *5–6, and the due process claim in Count IV for failure to state a claim, *id.* at *6. It also dismissed three of Plaintiffs' four "core" challenges to the petition denial in Counts II and III. *Id.* at *6–7. The Court declined to dismiss the final challenge in Count III, stating that it needed the administrative record to "rule on whether the FDA had sufficient safety concerns about homeopathic drugs to justify the petition denial." *Id.* at *8.

On October 8, 2025, Plaintiffs moved for summary judgment on Count III. *See* ECF No. 15. FDA now cross-moves for summary judgment and opposes Plaintiffs' motion for summary judgment.

## LEGAL STANDARD

In cases involving "review of agency action under the APA," the general "standard set forth in Rule 56 does not apply." *CS-360, LLC v. U.S. Dep't of Veterans Affs.*, 101 F. Supp. 3d 29, 32 (D.D.C. 2015) (first quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); and then quoting *Se. Conf. v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010)). Instead, the "district judge sits as an appellate tribunal," and "[t]he 'entire case' on review is a question of law." *Id.* (quoting *Am. Bioscience*, 269 F.3d at 1083). That question is "whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Id.* (quoting *Se. Conf.*, 684 F. Supp. 2d at 142).

## ARGUMENT

### I. Plaintiffs have not proven any injury traceable to FDA's petition denial

At the "early stage" of Defendants' motion to dismiss, Plaintiffs "just barely" met their burden to plausibly allege standing. *All. for Nat. Health*, 2025 WL 1938165, at *4. The Court determined that one of Plaintiffs' assertions—that Whole Foods stopped selling Meditrend's products due in part to "'actions against the homeopathic

5

industry'"—could be "generously construe[d]" as alleging Whole Foods acted in response to FDA's "petition denial and Final Guidance." *Id.* (quoting First Savage Decl. ¶ 11, ECF No. 6-2). This was "just enough" to plausibly allege that Meditrend suffered an injury "traceable" to Defendants' challenged conduct and that ANH therefore had "representational standing." *Id.* at *4–5.

As the Court noted, however, Plaintiffs' "burden to demonstrate standing increases over the course of litigation." *Id.* at *4 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At summary judgment, Plaintiffs "can no longer rest on . . . 'mere allegations'" to show jurisdiction "but must 'set forth' by affidavit or other evidence 'specific facts'" that satisfy Article III's requirements. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)). Yet Plaintiffs' submissions are entirely void of any showing of injury traceable to the petition denial or redressable by success on the merits. *See Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997) ("redressability and traceability overlap as two sides of a causation coin").

Plaintiffs abandon the one theory of standing the Court had found plausible. They do not even *mention* Whole Foods, much less "set forth . . . specific facts" showing the petition denial caused Whole Foods (or any other retailer) to stop selling Meditrend products. Further, Plaintiffs can no longer rely on the First Savage Declaration to establish standing. That Declaration's vague factual assertions and "conclusory manner," *All. for Nat. Health*, 2025 WL 1938165, at *4, are not "sufficiently specific to rise above the level of 'conclusory allegations,'" *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also* Reply Mem. in Supp. of Defs.' Mot. to Dismiss 5–10, ECF No. 9. Similarly, the Declaration cannot benefit from a generous reading because, "at summary judgment[,] a court will not 'presume the missing facts' necessary to establish an element of standing," *Swanson Grp.*, 790 F.3d at 240 (quoting *Nat'l Wildlife Fed'n*, 497 U.S. at 889).

6

Plaintiffs try to resurrect their implausible "increased supply costs" theory of standing, Pls. Mem. 1 n.2, ECF No. 15-1, but they trace these alleged costs to the revocation of CPG 400.400 in 2019—*not* the 2022 petition denial. Plaintiffs unequivocally aver that Meditrend's "increased supply costs . . . directly result[ed] from the FDA *revocation of CPG 400.400." Id.* (emphasis added); *see id.* (stating that Meditrend's injuries are "remediable . . . following reversal of the agency's CPG 400.00 revocation"). Similarly, Savage attests that "*revocation of CPG 400.400* and resulting FDA insistence through inspections on full drug GMP compliance is responsible for [the] price increases to Meditrend." Aff. of Richard D. Savage ¶ 7, ECF No. 15-2 (Second Savage Decl.) (emphasis added). Again and again, Savage declares that, "since 2019," Meditrend has faced "increased costs resulting from the revocation of CPG 400.400." *Id.* ¶ 3; *see id.* ¶ 4 ("revocation of CPG 400.400 [w]as the grounds for price increases"), ¶ 5 ("price increases . . . are a response to increased costs arising from the revocation of CPG 400.400"), ¶ 9 ("price increases" due to "the revocation of CPG 400.400").

For standing, the plaintiff's injury must be fairly "traced to the challenged action of the defendant." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). Fatally for Plaintiffs here, Count III—the sole remaining count—does not challenge the revocation of CPG 400.400. Nor could FDA's petition denial be considered "the true revocation of CPG 400.000." *All. for Nat. Health*, 2025 WL 1938165, at *6 (citing Mem. in Opp'n to Defs.' Mot. to Dismiss 16–17, ECF No. 6). "CPG 400.400's rescission" in October 2019 "marked the end of" FDA's prior approach toward homeopathic drugs. *Id.* FDA's denial of AHCF's petition in December 2022 was an "undeniably separate" event. *Id.*

Finally, the letters and financial information attached to the Second Savage Declaration do not link Meditrend's alleged price increases to the petition denial. Attachments A, D, and G pre-date the petition denial, issued on December 6, 2022, and

7

so are not evidence of its effect. *See* ECF No. 15-2, at 4–5, 12, 18–20.[2] Attachments B and C are letters from Meditrend's suppliers that do not mention the petition denial, instead attributing price increases to an "unpredictable supply chain" following "the start of the pandemic," *id.* at 8, various "ever-increasing expense[s]," *id.*, FDA's proposed and final guidance, *id.* at 10, and "revocation of [CPG] 400.400," *id.* Meanwhile, Attachments E and F are charts showing year-over-year price increases starting at least as early as 2019—three years before the petition denial—and do not purport to identify a cause. *Id.* at 14, 16. And Attachment H is an email from Meditrend that does not mention price increases or the petition denial. *Id.* at 22–23. None of Plaintiffs' evidence shows that the petition denial caused injury to Meditrend.

Because Plaintiffs provide *no* evidence tracing Meditrend's purported injuries to the petition denial and do not otherwise attempt to show that ANH has independent standing, they have failed to establish standing to "press" Count III. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Therefore, the Court lacks subject-matter jurisdiction and should dismiss this action.

## II. FDA reasonably denied AHCF's citizen petition

Even if the Court finds that Plaintiffs have standing, Count III fails on the merits because Plaintiffs cannot demonstrate that FDA's denial of AHCF's citizen petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[3] "Judicial review under that standard is deferential," *FCC v.*

---

[2] Citations are to the page numbers assigned by ECF.

[3] Plaintiffs erroneously argue the petition denial must be supported by "substantial evidence" under 5 U.S.C. § 706(2)(E). Pls. Mem. 13–16. That standard applies "only to *formal* proceedings, not informal adjudications." *Phx. Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv.*, 998 F.3d 999, 1005 (D.C. Cir. 2021) (emphasis added). Because FDA's review of a citizen petition is not "subject to [5 U.S.C. §§] 556 and 557 . . . or otherwise reviewed on the record of an agency hearing provided by statute," 5 U.S.C. § 706(2)(E), it is not a formal adjudication subject to the "substantial evidence" standard.

8

*Prometheus Radio Project*, 592 U.S. 414, 423 (2021), and a court may not "substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 592 U.S. at 423. Further, as a challenge to FDA's denial of a petition for rulemaking, APA review is "extremely limited and highly deferential," and the Court "may reverse the agency's choice 'only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency.'" *McAfee v. FDA*, 36 F.4th 272, 274 (D.C. Cir. 2022) (first quoting *Massachusetts v. EPA*, 549 U.S. 497, 527–28 (2007); and then quoting *Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*, 883 F.2d 93, 97 (D.C. Cir. 1989)).

The only remaining question is whether "FDA had sufficient safety concerns about homeopathic drugs to justify the petition denial" and "increased enforcement." *All. for Nat. Health*, 2025 WL 1938165, at *8. On this point, AHCF's petition requested that FDA evaluate homeopathic drugs "in relation to the risks presented by other regulated products," AR7, such that homeopathic products should "fall into the lowest area of safety concern for all FDA regulated products," AR30; *see* AR50, 52, 57; *see also* AR36 (requesting that FDA "[r]ecognize as safe and effective homeopathic drugs that are properly manufactured and labeled and listed in . . . the Homeopathic Pharmacopoeia of the United States" (HPUS)).

**A.** FDA reasonably declined to adopt ACHF's proposed enforcement policy. The agency explained that, while it generally applies a risk-based enforcement strategy, it "does not have a single statement of enforcement policy that covers all product areas." AR7219. "[S]uch a broad statement of policy" is inappropriate because "it would not take into account the numerous specific considerations for each product area." *Id.* These considerations can include, for example, "the product's intended use(s), dosage form,

9

frequency of use, manufacturing quality, intended patient population, reported adverse events, quantity and combination of ingredients, and firm regulatory history, among others." AR7219. Accordingly, the agency's Final Guidance "describes the categories of homeopathic drug products that FDA generally will consider to be higher risk." *Id.*

FDA also refuted the petition's contention that homeopathic drugs are "inherently safe." AR7218 (quoting AR36). "[A]s with all drug products," the agency explained, "the safety of homeopathic drug products . . . depends upon many factors, including the manufacturing quality and the identity and amount of the 'active' ingredient(s)." AR7205 (citing AR7221–31). Some homeopathic drugs contain "amounts of active ingredients that could cause significant patient harm." *Id.* These include, FDA's supporting memorandum further detailed, ingredients derived from "plants, minerals, toxic chemicals," and "healthy or diseased animal or human sources." AR7223. Compounding the concern, the HPUS "does not limit the quantity or daily dose of active ingredient[s]," so, "even if manufactured correctly" or "highly diluted," some homeopathic drug products "have the potential to cause significant patient harm." *Id.*

Homeopathic drugs may further harm consumers by causing them to "forgo treatment with medical products that have been scientifically proven to be safe and effective." AR7205. FDA found that some homeopathic drugs "are marketed to treat serious diseases []or conditions," *id.*, including "asthma, opioid addiction, and cancer," AR7224 (citing AR7309–12; AR7313–14). Using these homeopathic products may cause patients to "delay or discontinue life-saving medical treatments." *Id.* Many other homeopathic drugs are "sold directly to consumers in major retail stores" either as alternatives to legally marketed over-the-counter drugs or for conditions FDA has not determined can be safely treated without a prescription. *Id.* Yet no homeopathic drug has ever satisfied the FDCA's general requirement that, except for over-the-counter monograph drugs legally marketed under 21 U.S.C. 355h (which does not apply to homeopathic products), nonprescription drugs "be approved under a New Drug

10

Application . . . that includes not only efficacy and safety data, but also studies showing that the product's labeling can be read, understood, and followed by the consumer without the oversight of a health care provider." *Id.* Accordingly, "FDA has not determined that consumers can adequately self-diagnose and self-treat many of the conditions" that homeopathic drugs are marketed to treat. *Id.*

In addition to these overarching safety concerns, "specific examples of significant risk to patients posed by homeopathic drugs" also "greatly contributed to" the agency's risk-based enforcement policy and decision to deny AHCF's petition. AR7224–25; *see* AR7224–31; AR7205. One case involved "99 cases of adverse events consistent with belladonna toxicity, including reports of infant deaths and seizures," and in another, FDA received over 130 reports of anosmia (loss of sense of smell) "associated with the use of Zicam homeopathic intranasal zinc products." AR7205.

Although Plaintiffs dismiss the former as an example of "poor manufacturing," Pls. Mem. 7, in the case of Zicam, FDA determined that "if the products were used as labeled, a user would receive significant daily exposure to intranasal zinc, raising a serious safety concern," AR7205; *see* Final Guidance 3 n.12 (same). Plaintiffs' only response is to falsely charge that FDA admitted Zicam "'was misrepresented as a homeopathic drug,'" Pls. Mem. 8 (citation omitted), misattributing to the agency a statement by ACHF, *see* AR12 ¶ 3.2.3 (ACHF making the statement).

Other examples abound. A consumer who never left the country was hospitalized with a likely "schistosomiasis infection"—"a disease caused by parasitic worms that are not found in the United States"—after using a homeopathic product containing "schistosoma haematobium." AR7227–28 (citing AR8877–78). Four companies marketed non-sterile eye drops with "dangerously high pH level[s]" that could cause "glaucoma, corneal scarring, and loss of vision." AR7229 (citing AR8906–13; AR8914–18; AR8919–23; AR8924–29). Another company had "inordinately high microbiological contamination in finished homeopathic products" marketed for, among other things,

11

"herpes, thyroid issues, and preventing cancer," resulting in a recall of "more than 900 products." AR7230 (citing AR8930–33; AR8934–49).

FDA's compliance programs also uncovered multiple instances of homeopathic products that risk exposing consumers to harmful toxins. One company's homeopathic products, marketed to treat conditions in infants and children, were manufactured from ingredients that "pose potentially toxic effects," including "nux vomica," which contains strychnine, a "highly toxic well-studied poison that is used to kill rodents." AR7231 (citing AR8950–62). Another company sought to sell injectable homeopathic drugs "formulated with many toxic ingredients, including lead, viper venom, arsenic, Nux Vomica (strychnine), and comfrey." AR7228. And aside from those toxic ingredients, FDA scientists explained that injectables by their nature present "higher risk" because they bypass the body's natural "protective barrier[s]," such as the liver and skin. AR7228–29; *contra* AR34 (AHCF claiming homeopathic injectables are "not high risk").

Given the foregoing safety concerns, *see* AR7225, combined with the "breadth and variety" of homeopathic drugs and the fact that FDA has never approved a new drug application for such a drug, the agency explained that it had "no basis to conclude that, as a class, [homeopathic drugs] belong in a lower category of risk than other products." AR7219; *see* AR7205 (similar). Therefore, FDA reasonably denied the citizen petition.

**B.**    In response, Plaintiffs do not purport to challenge the denial or engage with any of its reasoning. Instead, they target "FDA's determination" to "revoke[] CPG 400.400," Pls. Mem. 2, attacking that unchallenged action throughout their brief, *see, e.g.*, *id.* 1 n.2, 16, 20. Having failed to "press [any] argument" regarding the petition denial, Plaintiffs have "forfeited" the claim. *City of Duluth v. Nat'l Indian Gaming Comm'n*, 89 F. Supp. 3d 56, 62 n.4 (D.D.C. 2015); *see Ctr. for Biological Diversity v. Blank*, 933 F. Supp. 2d 125, 131 n.5 (D.D.C. 2013) (collecting cases for the proposition that a

12

party's "fail[ure] to press" a claim through "summary judgment briefing" means the party "has abandoned [that] claim").

Regardless of their target, the substance of Plaintiffs' arguments miss the mark. Their central contention is that FDA erred by concluding "homeopathic drugs are intrinsically unsafe." Pls. Mem. 2; *see id.* 9–11, 13–16, 19. But FDA said no such thing. The defining aspect of the agency's risk-based approach is to "prioritiz[e] enforcement and regulatory actions for *certain categories* of homeopathic drug products that potentially pose *higher risk* to public health." AR7206 (emphasis added); *see* AR7219; Final Guidance 1, 4–5.

Plaintiffs' misunderstanding of FDA's risk-based policy pervades their entire analysis. They repeatedly claim that "the great bulk of the record . . . contradict[s]" FDA's "determination that homeopathic drugs are intrinsically unsafe." Pls. Mem. 18; *see, e.g., id.* 16–19. But FDA recognized that many homeopathic drugs do not raise safety concerns, expressly stating that "many homeopathic drug products will fall outside the categories of products FDA intends to prioritize for enforcement." AR7219; *see* Final Guidance 1. For the same reason, Plaintiffs' attempt to "weigh" the record—by literally counting the number of pages it believes show homeopathic drugs to be safe and comparing it to the number of pages reflecting safety concerns—does not move the needle. Pls. Mem. 16–17, 19.

Plaintiffs also cannot wave away FDA's specific examples of safety risks with a blanket claim that the products involved were all "either misbranded, adulterated, or improperly labelled." *Id.* 5; *see id.* 8 (similar). FDA has never approved a new drug application for a homeopathic drug, so *any* homeopathic drug marketed to treat a medical condition would be, as a general proposition, "misbranded" or "adulterated" under the FDCA. *See MediNatura*, 998 F.3d at 936. And FDA explained that "many of the [safety] examples" involved "product labeling and ingredient formulation[s that] appeared to meet the conditions of CPG 400.400." AR7224–25. In any event, Plaintiffs'

13

mere "disagreement by itself is insufficient to demonstrate that [FDA] failed to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *AT&T Servs., Inc. v. FCC*, 21 F.4th 841, 851 (D.C. Cir. 2021) (citation omitted); *see Ipsen Biopharms., Inc. v. Becerra*, 108 F.4th 836, 840 (D.C. Cir. 2024) ("In analyzing the FDA's decision, we must be careful not to unduly second-guess an agency's scientific judgments, and will affirm the FDA's decision so long as it is reasonable and reasonably explained.") (citation and quotations omitted).

FDA denied the petition after drawing upon its compliance experience with the homeopathic drug industry, expert review of the risks associated with certain ingredients in homeopathic drugs, understanding of the risks to patients who opt for homeopathic drugs in lieu of legally marketed drug products, and decades of experience with risk-based approaches to enforcement. FDA's position therefore was not "counter to the evidence" or "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. Rather, FDA permissibly "exercise[d] its judgment in moving from the facts and probabilities . . . to a policy conclusion," *id.* at 52, a judgment within "its area of expertise" afforded a "high level of deference," *Rempfer v. Sharfstein*, 583 F.3d 860, 867 (D.C. Cir. 2009) (citation omitted); *see Seven Cty. Infrastructure Coal. v. Eagle Cty., Colo.*, 145 S. Ct. 1497, 1512 (2025) ("a reviewing court must be at its 'most deferential'" where an agency has made "scientific judgments" within its area of expertise) (quoting *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983)). Therefore, Plaintiffs cannot show that the petition denial was arbitrary or capricious, and the Court should grant summary judgment for FDA.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint for lack of standing or, alternatively, grant FDA's cross-motion for summary judgment on Count III and deny Plaintiffs' motion for summary judgment.

January 2, 2026                                  Respectfully submitted,

/s/ David H. Hixson
DAVID H. HIXSON (Ill. Bar No. 6289751)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 449-8070
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov