## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIANCE FOR NATURAL HEALTH**, **USA**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA**, *et al.*,<br><br>Defendants. | Case No. 24-cv-2989 (CRC) |

## <u>MEMORANDUM OPINION</u>

For decades, the Food and Drug Administration ("FDA") took a hands-off approach to the regulation of homeopathic drugs. That changed in 2019 when the agency withdrew its permissive enforcement policy in response to documented safety concerns. Three years later, the FDA issued final guidance on a new risk-based enforcement policy and denied an industry-sponsored citizen petition to adopt a rule that would have restored the prior, laissez-faire regime.

Plaintiffs Alliance for Natural Health ("ANH"), a homeopathy advocacy organization, and Meditrend, Inc., a homeopathic drug distributor, filed this suit in December 2022 against the United States, the FDA, and the FDA Commissioner (collectively, "Defendants"). The complaint alleges that the new guidance document and petition denial violated the Administrative Procedure Act ("APA") and Fifth Amendment. In a ruling last year, the Court dismissed the bulk of Plaintiffs' claims. See All. for Nat. Health, USA v. United States, No. 24-cv-2989 (CRC), 2025 WL 1938165 (D.D.C. July 15, 2025). What remains is one count asking the Court to set aside the denial of the citizen petition as arbitrary and capricious under 5 U.S.C. § 706(2)(A).

Both sides now move for summary judgment on that count.  Concluding that Plaintiffs lack standing, the Court will grant summary judgment in favor of Defendants and dismiss the case.

## I.    Background

The Court surveyed the regulatory landscape for homeopathic drugs in its prior opinion. Id. at *1–3.  The following background for the remaining issues before the Court suffices here.

Homeopathic drugs are subject to the requirement in the Federal Food, Drug, and Cosmetic Act that all "new drugs" must be approved by the FDA before they are marketed for sale.  MediNatura, Inc. v. FDA, 998 F.3d 931, 935 (D.C. Cir. 2021).  Yet the FDA has never approved a homeopathic medicine as a new drug.  Id.  Nor has it found a homeopathic drug to be "generally recognized as safe and effective" ("GRAS/E") and therefore not a "new drug" requiring approval.  Id.  Rather, the FDA historically "exercised its enforcement discretion regarding the sale of homeopathic drugs through its 1988 Compliance Policy Guide 7132.15 § 400.400 'Conditions Under Which Homeopathic Drugs May be Marketed' (CPG 400.400)." Id. (citation omitted).  That policy effectively created a safe harbor for homeopathic drug producers:  So long as producers followed certain conditions, they could market their drugs without FDA approval.  See All. for Nat. Health, 2025 WL 193816, at *2.

That hands-off approach began to shift in 2015 when the agency announced it would reevaluate CPG 400.400 in response to reports of adverse health effects from medicines labeled as homeopathic.  See MediNatura, 998 F.3d at 936.  The ensuing reassessment resulted in the issuance of the draft enforcement guidance in 2017 and the revocation of CPG 400.400 in 2019. Id.  In 2022, the pro-homeopathy advocacy group Americans for Homeopathy Choice Foundation ("AHCF"), which is not a party here, filed a citizen petition for rulemaking,

requesting presumptive GRAS/E determinations for homeopathic drugs and assurances against enforcement.  Compl. ¶¶ 39–41.  In December of that year, the FDA denied AHCF's petition and published final enforcement guidance.  See JA 151–70; FDA Mot. to Dismiss, Ex. A ("Final Guidance").

Plaintiffs brought this suit in 2024, alleging that the Final Guidance and the denial of AHCF's petition violated the APA and the Fifth Amendment.  The FDA moved to dismiss for lack of standing, lack of subject matter jurisdiction, and failure to state a claim.  The Court granted the motion in part.  It first concluded that Meditrend (and by extension ANH as an associated industry group) had done "just enough" to establish standing at the motion to dismiss stage by plausibly asserting in an affidavit from Meditrend's founder that Whole Foods had removed the company's products from its stores due to the FDA's 2017 revocation of CPG 400.400 and other unspecified "actions against the homeopathic industry."  All. for Nat. Health, 2025 WL 193816, at *4.  The Court warned, however, that at summary judgment Plaintiffs would need to come forward with additional evidence showing that Whole Foods' purported about-face was traceable to the specific agency actions being challenged: the 2022 petition denial and Final Guidance.  Id. (emphasizing that "a plaintiff's burden to demonstrate standing increases over the course of litigation").

The Court then found that while the denial of AHCF's petition constituted final agency action, the Final Guidance did not because it carried no legal consequences.  Id. at *5.  It thus limited Plaintiffs' APA challenges to the denial of the citizen petition.

Moving to the government's Rule 12(b)(6) arguments, the Court held that Plaintiffs failed to state a claim under the Fifth Amendment that the Final Guidance was unconstitutionally vague.  Id. at *6.  It went on to reject three of plaintiff's APA challenges to the petition denial,

3

which raised purely legal issues. Id. at *7. However, the Court denied the FDA's motion as to a fourth APA challenge—that the petition denial was arbitrary and capricious because the FDA lacked sufficient safety concerns to justify it—due to the absence of the entire administrative record. Id. at *8. That claim, Count III of the complaint, was therefore all that remained after the Court's ruling on the motion to dismiss.

Plaintiffs have now moved for summary judgment on Count III. Defendants have opposed and cross-moved. They renew their standing argument and, in any event, insist that the petition denial was not arbitrary and capricious given ample reports of safety concerns documented in the administrative record.

## II.   Analysis

The Court begins and ends with standing.

"The party invoking federal jurisdiction bears the burden of establishing standing—and, at the summary judgment stage, such a party can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 411–12 (2013) (internal quotation marks omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Id. at 409 (citations and internal quotation marks omitted).

The government does not contest that Plaintiffs have asserted concrete injuries, which the Court will describe in a moment. Rather, it disputes that Plaintiffs' purported harms are traceable to the FDA's 2022 denial of AHCF's petition and therefore can be redressed by its vacatur. See Citizens for Const. Integrity v. Census Bureau, 115 F.4th 618, 628 (D.C. Cir. 2024) ("If a plaintiff cannot show that the government's action or inaction is 'causally connected to the

plaintiff's injury,' they cannot demonstrate Article III standing." (quoting <u>California v. Texas</u>, 593 U.S. 659, 660 (2021)); <u>Dynalantic Corp. v. Dep't of Def.</u>, 115 F.3d 1012, 1017 (D.C. Cir. 1997) ("Typically, redressability and traceability overlap as two sides of a causation coin[.]"). Traceability demands a "predictable chain of events leading from the government action to the asserted injury." <u>FDA v. All. for Hippocratic Med.</u>, 602 U.S. 367, 385 (2024).

The government is correct: Plaintiffs have not established the traceability and redressability prongs of standing.

Recall that at the motion to dismiss stage, Meditrend offered a declaration from its founder and executive director, Richard Savage, in support of standing. <u>See</u> Pls.' Opp'n to Defs.' Mot. to Dismiss, Ex. B ("First Savage Decl."). Savage stated that in 2023, Meditrend was invited by Whole Foods to join a large sales initiative. However, "[d]ue to the FDA's revocation of [CPG 400.400]" and unspecified agency "actions against the homeopathic industry," Savage claimed that "Whole Foods cancelled [Meditrend's] involvement in the global initiative and removed all Meditrend products from its stores[.]" First Savage Decl. ¶ 11. Reading the phrase "actions against the homeopathic industry" generously to include the agency actions challenged in the complaint—i.e., the denial of AHCF's petition and the Final Guidance—the Court found Mr. Savage's assertions sufficient to establish standing at the motion to dismiss stage. <u>All. for Nat. Health</u>, 2025 WL 193816, at *4. (Notably, the repeal of CPG 400.400 three years earlier was not subject to challenge.) The Court warned, however, that additional facts would be needed at summary judgment. <u>Id</u>. Despite this warning, while Meditrend still purports to rely on the same declaration to support standing, <u>see</u> Pls.' Opp'n. to Defs.' Cross-Motion at 2 n.1 (citing First Savage Decl. ¶ 13), it has offered no new evidence concerning Whole Foods' actions.

As predicted, then, the conclusory statements in the declaration do not meet the requirements of traceability or redressability now that the Court is considering summary judgment.  Cf. Swanson Grp. Mfg. LLC v. Jewell, 790 F.3d 235, 240 (D.C. Cir. 2015) (explaining that courts will not fill in "missing facts" necessary to establish an element of standing at summary judgment (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990))).  The most critical deficiency is that the declaration focuses mainly on the repeal of CPG 400.400, which is the only specific cause for Whole Foods' purported actions that Savage identifies.  But setting aside the denial of AHCF's petition would not affect the repeal of CPG 400.400.  Accordingly, Whole Foods' purported decision to pull Meditrend's products is not traceable to the petition denial and granting judgment in Plaintiffs' favor would not redress whatever harm Whole Foods caused.

In their summary judgment briefing, Plaintiffs identify an additional injury to support standing: economic loss due to increases in raw material prices.  Specifically, Mr. Savage offers a second supporting declaration stating that "Meditrend has experienced price increases from its suppliers since 2019, principally due to the reaction of these suppliers to decreases in available ingredients and in increased costs resulting from revocation of CPG 400.400 and FDA insistence on full drug GMP compliance in inspections."  See Pls.' Mot. for Summ. J., Ex. ("Second Savage Decl.") ¶ 3.  Attached to the declaration are letters to Meditrend from one of its ingredient suppliers, Apotheca, Inc., announcing price increases in 2019 and 2023.  Also attached is an October 2025 letter from counsel to another Meditrend supplier, Grato Holdings, explaining the reasons for the company's "incremental[]" price increases "year after year since 2019."  Second Savage Decl., Attach. C.

This second declaration suffers from the same principal deficiency as the first.  The second declaration repeatedly attributes supplier price increases to the 2019 revocation of CPG 400.400.  Second Savage Decl. ¶¶ 3–6, 9.  At no point does it mention the impact of the 2022 petition denial, which, again, is the lone remaining agency action under review here.[1]

Nor is the evidence provided with the second declaration sufficient to show that the agency's denial of the petition caused supplier price increases.  The letters from Apotheca describe price increases beginning in 2019, three years prior to the petition denial, although some did occur after.  The 2019 letter attributes the increases to a wide range of generalized factors, including "intensifying scrutiny and concern from the [FDA]" and "cost increases in the normal course of doing business."  Id., Attach. A.  The 2023 letter, meanwhile, states that "since the start of the [Covid-19] pandemic," Apotheca had navigated an "unpredictable supply chain" as well as "the ever-increasing expense for raw materials shipments, laboratory services, regulatory compliance, and labor[.]"  Id., Att. B.  These generic explanations for Apotheca's price increases, one of which predates the petition denial and both of which are completely divorced from the challenged agency action, are too imprecise to establish traceability or redressability.  See Swanson, 790 F.3d at 240 (explaining that a party must set forth "specific facts" to substantiate standing (citation omitted)).

The letter regarding Grato Holdings pinpoints the cause of the company's price increases more specifically.  But that cause is likewise linked to the FDA's revocation of CPG 400.400 and

---

[1] Plaintiffs assert in their opposition brief that the petition denial is part of an overall FDA course of action that has continued to cause Meditrend injury.  See Pls.' Opp'n to Defs.' Cross-Mot. for Summ. J. at 2–5 & n.2.  But even if this contention were sufficient to satisfy traceability and redressability, "[c]ounsel's unsupported assertions in [briefing] are inadequate to meet the burden of proof to demonstrate standing." Carbon Sequestration Council v. EPA, 787 F.3d 1129, 1140 (D.C. Cir. 2015); see also Sierra Club v. EPA, 292 F.3d 895, 901 (D.C. Cir. 2002).

its 2017 draft enforcement guidance, as well as the finalization of that guidance, not the 2022 petition denial.  <u>See</u> Second Savage Decl., Attach. C.  Specifically, Grato's counsel indicates that following those events, homeopathic raw material suppliers faced increased scrutiny by FDA safety inspectors, causing some suppliers to exit the market, which in turn reduced supply and increased costs.  <u>Id.</u>  That may well be true, but it does not suggest that the higher costs resulted from the petition denial or that they would subside if the denial were set aside.  So, like Mr. Savage's first declaration, the second one does not satisfy the requirements of traceability and redressability either.

The Court appreciates that the homeopathic industry continues to chafe from the FDA's shift from a permissive to a more risk-based enforcement posture.  But that shift began over a decade ago.  And its consequences were felt with the revocation of CPG 400.400, which was a final agency action that the industry was free to challenge.  <u>See</u> <u>All. for Nat. Health</u>, 2025 WL 1938165, at *6 (citing <u>MediNatura, Inc. v. FDA</u>, 496 F. Supp. 3d 416, 444 (D.D.C. 2020)).  The subsequent denial of AHCF's citizen petition was also final agency action subject to review.  But Plaintiffs cannot use it to seek redress of injuries that were allegedly caused by the FDA's prior actions.  They therefore lack standing.

**III.    Conclusion**

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion.  A separate Order will accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>April 24, 2026</u>